KING v. PENINSULAR PORTLAND CEMENT CO.

1. MASTER AND SERVANT—APPEAL—RIGHTS OF PARTY NOT APPEAL-
ING.
  Under 2 Comp. Laws 1915, § 5464, the widow of a de-
  ceased employee was properly before the industrial acci-
  dent board on the appeal of the employer and its in-
  surer, although she did not appeal from the decision
  of the arbitration committee awarding compensation to
  her two children as dependents but denying her claim,
  since the statute contemplates a *de novo* hearing before
  the board, on appeal, with full power to make decision
  therein without regard as to which party appealed.

2. SAME—EVIDENCE—PRESUMPTION OF LEGITIMACY MAY NOT BE
OVERCOME BY MOTHER'S TESTIMONY.
  In proceedings under the workmen's compensation act,
  admissions of the widow that a son born during wed-
  lock and a daughter born about three months after the
  death of the husband were not the children of the de-
  ceased, were properly rejected by the board, since the
  presumption of legitimacy may not be overcome by the
  testimony of the mother to the contrary.

3. SAME—POSTHUMOUS CHILDREN DEPENDENTS.
  Posthumous children are entitled to compensation due as
  the result of the death of a parent.

4. SAME—CHILDREN—DEPENDENTS—STATUTE.
  A son born a little more than a month after the mar-
  riage of the parents, and a daughter born about three
  months after the death of the father in an industrial
  accident, were properly awarded compensation as depend-
  ents under the workmen's compensation act (Act No. 64,
  Public Acts 1919, part 2, § 6).

5. SAME—WIDOW—DEPENDENTS—LIVING TOGETHER.
  Where there was evidence that deceased employee worked
  in three different towns during the last five months of
  his life, during which time he was not accompanied by
  his wife, who was employed in a hotel, that he wrote
  her affectionate letters requesting her, with their young
  son, to join him, and that he sent her money on two

On the general subject as to who are dependents within the
meaning of workmen's compensation act, see notes in L. R. A.
1916A, 121, 248; L. R. A. 1917D, 157. and L. R. A. 1918F, 483.
  On the question as to competency of woman to testify to non-
access of husband, see note in 2 L. R. A. (N. S.) 1053.

occasions, it cannot be said by the Supreme Court, on certiorari to review an award to her as a dependent, that there was no evidence to support the award, although she admitted she did not join him because she intended to marry another, and did marry him about 21 days after her husband's death.

Certiorari to Industrial Accident Board. Submitted October 7, 1921. (Docket No. 55.) Decided December 21, 1921.

Marie King and others presented their claim for compensation against the Peninsular Portland Cement Company for the accidental death of plaintiffs' decedent in defendant's employ. From an order awarding compensation defendant and the Michigan Mutual Liability Company, insurer, bring certiorari. Affirmed.

*Beaumont, Smith & Harris* (*Hal H. Smith* and *Albert E. Meder*, of counsel), for appellants.

*Cummins & Nichols* and *Paul G. Eger*, for appellees.

STONE, J. The writ of certiorari herein brings before this court from the industrial accident board the record in the claim for compensation of Marie King, Margaret Aughinbaugh and Joseph Aughinbaugh, against the defendants, as total dependents of Burley Aughinbaugh who was killed May 19, 1920, while employed by the defendant Peninsular Portland Cement Company at Cement City, Michigan. Marie King was the wife of deceased. The other two applicants claim compensation as his children, by Marie King. The only question in controversy is the dependency of the above named applicants, or that of any of them. The matter was heard on arbitration on March 10, 1921, and compensation was awarded to the applicants Margaret

and Joseph at the rate of $14 per week for a period of 300 weeks, but was denied the applicant Marie King on the ground that she was not a dependent within the meaning of the law. From this award the defendants have appealed to the full board, alleging that the board erred in the following particulars:

(*a*) By holding as matter of law that either applicant was conclusively presumed to have been dependent upon the deceased on May 19, 1920.

(*b*) By holding as matter of law that either applicant as a matter of fact, was dependent for support upon the earnings of deceased on May 19, 1920.

(*c*) By holding as matter of law that either Margaret or Joseph was a member of the family of deceased on May 19, 1920.

(*d*) By holding as matter of law that either Margaret or Joseph was a lineal descendant of deceased.

(*e*) By holding as matter of law that either applicant was either totally or partially dependent for support on decedent on May 19, 1920.

(*f*) By holding as matter of law that Marie King was properly before it, so that an award could be made in her favor.

(*g*) By holding that it had authority to reject testimony not objected to at the arbitration or hearing on review.

(*h*) By ordering that either applicant was entitled to any compensation from either of the defendants.

It appears that Marie King did not appeal from the arbitration finding, and we are met at the threshold of the case by the proposition that Marie King was not properly before the accident board. We do not think there is any merit in this proposition, but that it is disposed of by the case of *Margenovitch* v. *Newport Mining Co.*, 213 Mich. 272, in which we said:

"If either party files an appeal, the industrial accident board is given the power by the statute to review the decisions of the committee on arbitration. 2 Comp. Laws 1915, § 5464. This section evidently con-

templates a *de novo* hearing before the industrial accident board on appeal with the power to make decision therein, without regard as to whether such decision affirms, reverses, increases or decreases the award made by the arbitrators, and without regard to the question as to whose appeal it may have been."

Marie Aughinbaugh (now King) was married to the decedent on April 25, 1918. She and the deceased lived together as husband and wife from the time of their marriage until January, 1920. Joseph was born May 31, 1918, a little more than a month after said marriage. The child Margaret was born August 28, 1920, a little more than three months after the death of decedent. There was evidence to the effect that during the time the parties lived together as husband and wife the decedent supported his wife and said child Joseph; that in January, 1920, decedent went to Disko, Indiana, where he secured a job, the wife remaining in Wabash, Indiana. Decedent continued to live in Disko for one month, when he went to Decatur, Indiana, where he remained about 3 months, removing from there to Cement City, Michigan, only 6 days before he was killed; that the boy Joseph was placed with a Mrs. Hauck by his mother about 1 month before the death of his father while she was employed in a hotel; after remaining with Mrs. Hauck about a week and a half the mother again took him; she kept him with her for about a week when he again returned to Mrs. Hauck, where he remained until after the death of his father; that during the 3 months the deceased lived in Decatur he wrote a number of affectionate letters to his wife and requested her to join him with the boy Joseph. He also sent her $5 on two occasions. Three of these letters were offered in evidence. The board found that it was apparent from these letters and other evidence that the deceased did not consider that he was living apart from his wife and child. It

did appear under a rigorous cross-examination that Marie admitted that she did not join her husband because she intended to marry one Joseph King, and the evidence shows that she did marry King about 21 days after her husband's death.   It appears that defendants secured a statement from the widow in January, 1921, in which she admitted that the deceased was not the father of either of the children; and on cross-examination she admitted that this statement was true.   The defendants claim that because this testimony was admitted without objection it should be controlling in determining the status of the children.   The board held that it was contrary to public policy to allow parents to testify to the illegitimacy of their children; and for that reason the board rejected the testimony of the mother relative to the parentage of her children.   The rule seems to be well established that neither the father nor the mother can testify to the illegitimacy of the child.   See *Egbert* v. *Greenwalt,* 44 Mich. 245 (38 Am. Rep. 260) ; *Rabeke* v. *Baer,* 115 Mich. 328; *People* v. *Case,* 171 Mich. 282.   It was held distinctly in the last cited case that the presumption of legitimacy cannot be overcome by the testimony of either the husband or wife.

In the *Baer Case* the following language was quoted with approval from 1 Jones on Evidence, § 96:

"It is well settled, on grounds of public policy, affecting the children born during the marriage, as well as the parties themselves, that the presumption of legitimacy as to children born in lawful wedlock cannot be rebutted by the testimony of the husband or wife to the effect that sexual intercourse has or has not taken place between them   *   *   *   the rule not only excludes direct testimony concerning such intercourse, but all testimony of such husband or wife which has a tendency to prove or disprove legitimacy.   *   *   *   The rule rests, not only on the ground that it tends to prevent family dissension, but on the broad grounds of public policy.   *   *   *

Nor does it depend upon the form of action, or the parties. On the contrary, it obtains whatever the form or legal proceedings, or whoever may be the parties."

See, also, *Evans* v. *Freeman*, 2 L. R. A. (N. S.) 619, note (165 Ind. 369, 74 N. E. 244, 75 N. E. 651, 6 Ann. Cas. 813) ; *Wallace* v. *Wallace*, 137 Iowa, 37 (114 N. W. 527, 14 L. R. A. [N. S.] 544, 126 Am. St. Rep. 253, 15 Ann. Cas. 761). We think the board did not err in its holding upon this question.

As to the child Margaret, born after the death of decedent, it has been repeatedly held that posthumous children are entitled to compensation due as the re-result of the death of a parent. By the terms of section 11807, 3 Comp. Laws 1915, it is provided that posthumous children are considered as living at the death of their parents. *Catholic Benefit Ass'n* v. *Firnane*, 50 Mich. 82; *Chambers* v. *Shaw*, 52 Mich. 18; *Knorr* v. *Millard*, 57 Mich. 265, 268; *McLain* v. *Howald*, 120 Mich. 274.

A child *en ventre sa mere* is totally dependent upon its parents for nourishment.

In accordance with the general presumption that a posthumous child is to be regarded as born already, if it be for his benefit, such child may rank as a dependent. *Williams* v. *Ocean Coal Co.* (1907), 2 K. B. 422, 76 L. J. K. B. 1073, 97 L. T. R. 150, 23 T. L. R. 584, 9 W. C. C. 44; 6 N. & C. C. A. 260.

In New Jersey it is held that a posthumous illegitimate child is dependent upon its father for support, within the meaning of the workmen's compensation law of that State. *Klimchak* v. *Ingersoll Rand Co.*, 39 N. J. L. J. 275.

The board held that Margaret was the legitimate child of the deceased under the evidence; and that both children being under 16 years of age were, under the

statute, conclusively presumed to be dependents.    Act No. 64, Pub. Acts 1919, pt. 2, § 6.

Referring to the record, while much criticism might be indulged in when considering the testimony of the applicant Marie King, we are unable to say that there was no evidence to support the several findings of the board.    Were we weighing the testimony and passing upon the facts, we might reach a different conclusion than that arrived at by the board.    This we cannot do.    The board concluded its finding in the following language:

"After a careful examination of the entire files in the case, we find:

"1. That Marie King was the wife of Burley Aughinbaugh on May 19, 1920, and that she was living with him at the time of his death;

"2. That Joseph Aughinbaugh was the son of Burley Aughinbaugh, and that he was living with Burley Aughinbaugh on May 19, 1920, and that he was less than 16 years of age;

"3. That Margaret Aughinbaugh is the posthumous child of Marie Aughinbaugh-King and Burley Aughinbaugh, and that she was born August 28, 1920.

"It therefore follows that the decision of the arbitration committee, insofar as it refers to Margaret and Joseph Aughinbaugh, should be affirmed, and that the decision, insofar as it refers to Marie King, should be reversed, and that Marie King, Margaret Aughinbaugh and Joseph Aughinbaugh, are held to be total dependents of Burley Aughinbaugh.    An order to that effect will be duly entered."

The order of the industrial accident board is therefore affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.