WESTFALL *v.* J. P. BURROUGHS & SON.

1. Workmen's Compensation—Findings of Department Conclusive in Absence of Fraud.

Findings of fact, made by the department of labor and industry acting within its powers, are conclusive in the absence of fraud.

2. Marriage—Common-Law Marriage—Evidence.

Whether a common-law marriage exists is nearly always a question of fact and to raise the presumption of such a marriage requires clear and convincing evidence.

3. SAME—CEREMONY—COHABITATION—EVIDENCE.

Whatever the form of ceremony, or even if all ceremony be dispensed with, if the parties agreed presently to take each other for husband and wife, and from that time lived together professedly in that relation, proof of such facts would be sufficient to constitute proof of marriage binding upon the parties and which would subject them and others to · legal penalties for disregard of its obligations.

4. SAME—COMMON-LAW MARRIAGE—COMPETENCY—COHABITATION.

Parties, competent to enter into a marriage contract, who presently agree to take each other as husband and wife and subsequently cohabit as such consummate a valid marriage.

5. WORKMEN'S COMPENSATION—FINDING OF DEPARTMENT—MARRIAGE.

Finding by department that one claiming to be wife of deceased employee was neither wife nor dependent of employee *held*, conclusive, in the absence of fraud, where department applied proper rules of law in arriving at its conclusion (2 Comp. Laws 1929, § 8422).

6. SAME—PARTIES—POSTHUMOUS CHILDREN.

Determination that child of woman, not the wife of deceased employee, who was posthumously born was not a dependent of the employee as a matter of law, by denial of petition to add her as a party plaintiff and refusal to take additional testimony on question of her dependency *held*, error requiring reversal and taking of testimony on question of dependency (2 Comp. Laws 1929, §§ 8422, 8423).

7. SAME—DEPENDENTS—POSTHUMOUS CHILDREN—LEGITIMACY.

The issue of the dependency of a posthumous child is one of fact and inquiry thereinto by department of labor and industry is not to be foreclosed because the child may be an illegitimate one (2 Comp. Laws 1929, §§ 8422, 8423).

8. PARENT AND CHILD—POSTHUMOUS CHILDREN.

Under 3 Comp. Laws 1929, § 13452, posthumous children are considered as living at the death of their parents, for purposes of inheritance.

9. SAME—CHILD EN VENTRE SA MERE.

A child *en ventre sa mere* is totally dependent upon its parents for nourishment.

NORTH, WIEST, and BUTZEL, JJ., dissenting in part.

Appeal from Department of Labor and Industry. Submitted April 13, 1937. (Docket No. 58, Calendar No. 38,152.) Decided June 29, 1937.

Doris Westfall, a minor, by William Streeter, her guardian, presented her claim for compensation against J. P. Burroughs & Son, employer, and Michigan Mutual Liability Company, insurer, for death of her alleged husband. Petition to join Ramona Elizabeth Westfall as party plaintiff. From award for defendant and denying right of Ramona Elizabeth Westfall to be joined as plaintiff, she and plaintiff appeal. Affirmed as to plaintiff. Reversed as to Ramona Elizabeth Westfall.

*Graydon G. Withey, Earl P. Trobert* and *Carl R. Hospers* (*Richard C. Fruit,* of counsel), for plaintiff.

*L. J. Carey* and *George J. Cooper,* for defendant.

Bushnell, J. This is an appeal from an order of the department of labor and industry, filed June 8, 1936, which found that plaintiff, Doris Pincombe (Westfall), was not the wife of Kenneth Westfall, deceased, and therefore was not a dependent within the meaning of 2 Comp. Laws 1929, § 8422; and an appeal from an order denying a petition to join as party plaintiff Ramona Elizabeth Westfall, an alleged posthumous child of Kenneth Westfall and Doris Pincombe.

The department found that Kenneth Westfall was killed in the course of his employment with defendant, J. P. Burroughs & Son, on December 26, 1934. Doris Pincombe, a minor, by her guardian, filed a notice and application for adjustment of claim, as-

serting that she was the wife of the deceased. Testimony at the hearing disclosed that there had been no ceremonial marriage and that plaintiff's right to compensation, if any, was based upon an alleged common-law marriage. The deputy commissioner found that plaintiff "was not living with deceased at the time of said accidental injury, therefore is not entitled to receive compensation." On appeal to the department the award was affirmed for the reason that plaintiff was not the wife of deceased and not a dependent within the meaning of 2 Comp. Laws 1929, § 8422. In denying the petition to join Ramona as a party plaintiff, the department held that she was not a dependent under 2 Comp. Laws 1929, §§ 8422, 8423, because she was born after the accident and after the institution of these proceedings.

Doris admitted that she and the deceased never actually lived together as man and wife, and gave as a reason that his limited earnings did not permit them to do so at that time.

The following language from *Brown* v. *Long Manufacturing Co.,* 213 Mich. 221, 230, applies to the present situation:

"Whether a common-law marriage exists nearly always presents a question of fact. We think this is true in the instant case. It has already appeared the industrial accident board * found against the existence of the relation. We have repeatedly held that the findings of fact made by the industrial accident board * acting within its powers shall, in the absence of fraud, be conclusive." (See also authorities therein cited on page 231).

* The powers and duties of the industrial accident board have been transferred to the department of labor and industry and the board abolished. See 2 Comp. Laws 1929, § 8312.—REPORTER.

The opinion in the *Brown Case* contains a number of authorities in this State on common-law marriages and includes language from *Meehan* v. *Edward Valve & Manfg. Co.*, 65 Ind. App. 342 (117 N. E. 265) in which that court said:

"To raise the presumption of marriage by such means, the evidence must be clear and convincing."

This court has not deviated from the implications of *Hutchins* v. *Kimmell*, 31 Mich. 126 (18 Am. Rep. 164), where Mr. Justice COOLEY said:

"Whatever the form of ceremony, or even if all ceremony was dispensed with, if the parties agreed presently to take each other for husband and wife, and from that time lived together professedly in that relation, proof of these facts would be sufficient to constitute proof of a marriage binding upon the parties, and which would subject them and others to legal penalties for disregard of its obligations."

We have consistently held that where parties who were competent to enter into the marriage contract presently agreed to take each other as husband and wife, and subsequently cohabited as such, the marriage was valid. It is more or less academic to discuss whether cohabitation is a necessary element of a common-law marriage in Michigan or whether it is one of the necessary proofs of the relationship, because regardless of what theoretically or technically constitutes a common-law marriage this court has repeatedly indicated that it will not find a valid nonceremonial marriage except upon proof of subsequent cohabitation. We said in *People* v. *Spencer,* 199 Mich. 395:

"In this State a marriage is not proven by evidence only that the parties, *inter se,* agreed to take

each other for husband and wife. To establish a nonceremonial marriage, there must be proof, not only of the agreement, but of the setting up of the relation of husband and wife by cohabitation. The parties must act in conformity with such an agreement and live together and cohabit as husband and wife—live together in that relation. *Hutchins* v. *Kimmell,* 31 Mich. 126, 130 (18 Am. Rep. 164) ; *People* v. *McQuaid,* 85 Mich. 123, 127 ; *Peet* v. *Peet,* 52 Mich. 464, 467 ; *Lorimer* v. *Lorimer,* 124 Mich. 631 ; *Judson* v. *Judson,* 147 Mich. 518.''

See, also, *Barker* v. *Valentine,* 125 Mich. 336 (51 L. R. A. 787, 84 Am. St. Rep. 578) ; *Supreme Tent of the Knights of the Maccabees of the World* v. *McAllister,* 132 Mich. 69 (102 Am. St. Rep. 382) ; *People* v. *Goodrode,* 132 Mich. 542 ; *In re Fitzgibbons' Estate,* 162 Mich. 416 (139 Am. St. Rep. 570) ; *Severance* v. *Severance,* 197 Mich. 327.

The department applied the proper rules of law and was not satisfied after · ''a careful analysis of the testimony in this case consisting of over 150 pages'' that Doris Pincombe was the wife of the deceased. Its finding of fact, in the absence of fraud, is · conclusive. *Brown* v. *Long Manufacturing Co., supra.*

Although the department did not find that the mother of Ramona was the wife of the deceased nor a dependent, it is possible that Ramona may have been a dependent; for this reason, the department was in error, as a matter of law, in not permitting Ramona to be made a party plaintiff, and in failing to grant her petition to take additional testimony on the question of her dependency. The issue of Ramona's dependency is also one of fact, and an illegitimate child may or may not be a dependent within the meaning of the compensation act. We have held that illegitimate children actually cared

for and supported by the deceased up to the time of his death were clearly within the class entitled to compensation. *Roberts* v. *Whaley,* 192 Mich. 133 (L. R. A. 1918 A, 189). The fact that Ramona was a posthumous illegitimate child is not sufficient for denial of her day in court.

"As to the child Margaret, born after the death of decedent, it has been repeatedly held that posthumous children are entitled to compensation due as the result of the death of a parent. By the terms of 3 Comp. Laws 1915, § 11807 (3 Comp. Laws 1929, § 13452), it is provided that posthumous children are considered as living at the death of their parents. *Supreme Council of the Catholic Mutual Benefit Ass'n* v. *Firnane,* 50 Mich. 82; *Chambers* v. *Shaw,* 52 Mich. 18; *Knorr* v. *Millard,* 57 Mich. 265, 268; *McLain* v. *Howald,* 120 Mich. 274 (77 Am. St. Rep. 597).

"A child *en ventre sa mere* is totally dependent upon its parents for nourishment." *King* v. *Peninsular Portland Cement Co.,* 216 Mich. 335.

On the record before us, it may be argued that there is no showing of dependency. The petition to join Ramona as a party plaintiff was followed by a petition for adjournment in order to ask for leave to take additional testimony in her behalf. The department held that the petition to take additional testimony did not comply with Rule 10, § 2, of the rules of practice and procedure of the department. The rule is not set up in the record and we are not informed as to its contents. It may be applicable, but in any event, there is a showing in this record that the petition of Ramona was filed by an attorney who had just come into the case, and we believe that the interests of justice demand that the infant should be permitted to present such competent testimony as may be available in her behalf. The department

can then determine whether or not she was a dependent within the language of the statutes cited (2 Comp. Laws 1929, §§ 8422 and 8423). See, also, *King* v. *Peninsular Portland Cement Co., supra; Bassier* v. *J. Connelly Construction Co.,* 227 Mich. 251, and *Lewis* v. *Eklund Bros. Co.,* 244 Mich. 22.

The award of the department as to Doris Pincombe (Westfall) is affirmed, but its order denying the petition of Ramona Elizabeth Westfall to be joined as party plaintiff is vacated. The cause is remanded for the taking of testimony and the determination of the question of Ramona's dependency. Costs to Ramona Elizabeth Westfall.

FEAD, C. J., and SHARPE, POTTER, and CHANDLER, JJ., concurred with BUSHNELL, J.

NORTH, J. (*dissenting in part*). I am not in accord with that portion of Mr. Justice BUSHNELL's opinion wherein he reverses the order of the department of labor and industry denying the petition of Ramona Elizabeth Westfall, an alleged illegitimate posthumous child of Kenneth Westfall, to intervene.

There can be no lawful claim for an award on the ground of dependency under the workmen's compensation act unless the claimant is a dependent of the deceased employee. The right is wholly statutory and the statute defines who are dependents.

"No person shall be considered a dependent unless he or she is a member of the family of the deceased employee, or unless such person bears to said deceased employee the relation. of husband or widow, or lineal descendent, or ancestor, or brother or sister." 2 Comp. Laws 1929, § 8422.

No claim was presented to the department of labor and industry within the scope of which the petitioning illegitimate child can be found to be a dependent

within the meaning of the statute. The child was not born until after the death of Kenneth Westfall, the reputed father. The undisputed and conclusive testimony shows that the child's mother never lived in the family relation with Kenneth Westfall; and hence the petitioning child never lived in the relation of "a member of the family of the deceased employee." In the case of *Lewis* v. *Eklund Bros. Co.*, 244 Mich. 22, we held that an illegitimate child is not a lineal descendant of its reputed father. We there noted that this holding was in accord with our earlier decisions in *Roberts* v. *Whaley*, 192 Mich. 133 (L. R. A. 1918A, 189), and *Bassier* v. *J. Connelly Construction Co.*, 227 Mich. 251.

The petitioning infant clearly does not come within the statutory definition of a dependent and her petition to intervene in this proceeding was properly denied. The award of the department of labor and industry should be affirmed.

Wiest, and Butzel, JJ., concurred with North, J.

Butzel, J. (*dissenting in part*). There being no ceremonial or common-law marriage, the posthumous child was not legitimate. She should not be put to the expense of attempting to prove her claim when none exists under the compensation act.

In *Schofield* v. *Orrell Colliery Co., Ltd.*, (1909) 1 K. B. 178, an award to a posthumous illegitimate child was upheld because of an express statutory provision for illegitimates under the English workmen's compensation act which the court construed as making a posthumous illegitimate child a member of the family to the same extent as a legitimate child actually born at the time of death. In *Klimchak* v. *Ingersoll Rand Co.*, 39 N. J. L. J. 275 (a decision

by the New Jersey Common Pleas Court) referred to in *King* v. *Peninsular Portland Cement Co.*, 216 Mich. 335, quoted in Mr. Justice BUSHNELL's opinion, the court relied upon the New Jersey act which provided:

"Illegitimate children shall be presumed to be dependent when they were part of the decedent's household at the time of his death."

In construing this provision, the court said:

"The child, William Klimchak, although *en ventre sa mere,* whether considered as born at the time of his father's death, or dependent upon the earnings of the father, although indirectly through its mother being a part of decedent's household, falls within the definition of an illegitimate child."

We find that in a few other States where awards to illegitimate posthumous children were sustained, it was because of the peculiar wording of the compensation acts in those States making provision for illegitimate children. The Michigan act, however, contains no such provision.

It is true that when illegitimate children are accepted as members of the family and actually supported by the putative father, they are considered dependents and entitled to compensation. *Roberts* v. *Whaley,* 192 Mich. 133 (L. R. A. 1918A, 189). It is also true that posthumous legitimate children are considered the same as children born prior to the death of the parent. *King* v. *Peninsular Portland Cement Co., supra.* It does not follow, however, that illegitimate children born after the death of the putative father are dependents under the compensation act.

In *Bassier* v. *J. Connelly Construction Co.,* 227
Mich. 251, a compensation case, Mr. Justice FEL-
LOWS, speaking for the court, said:

"At common law an illegitimate child was con-
sidered *nullius filius,* the son of no one. This State,
in common with most of the States of the Union,
has modified in several regards the rigor of the com-
mon-law rule. Provisions are made for the com-
pulsory maintenance of illegitimate children by the
putative fathers (2 Comp. Laws 1915, § 7753 * *et
seq.*); the illegitimate child may inherit from its
mother but not from her ancestors (3 Comp. Laws
1915, § 11796 [3 Comp. Laws 1929, § 13441]); she
may inherit from him (3 Comp. Laws 1915, § 11797
[3 Comp. Laws 1929, § 13442]); the illegitimate child
may be legitimated by the subsequent marriage of
the parents or by an acknowledgment in writing by
the father (3 Comp. Laws 1915, § 11798 [3 Comp.
Laws 1929, § 13443]). Other provisions not neces-
sary to relate have been enacted but the legislature
has not seen fit to give them in all regards the status
of legitimate children. The common law obtains in
this State except as modified by statute. Until modi-
fied by statute the courts must administer it. Unless
by judicial legislation we write into the workmen's
compensation act a provision not there inserted by
the legislature, this plaintiff cannot prevail. It is
urged that the sins of the parents should not be
visited upon this child; all true, but in the absence
of statute justifying it their sins should not be visited
upon this employer of labor."

The correct rule is set forth in *Sanders* v. *Fork
Ridge Coal & Coke Co.,* 156 Tenn. 145 (299 S. W.

---

* See 3 Comp. Laws, 1929, § 12910, as amended by Act No. 8, Pub.
Acts 1931.—REPORTER.

795), where a question almost identical .with that in the instant case arose, and the court said:

"Our statute contains no such provision as the English statute. For an illegitimate child to enjoy the benefits of our compensation act he must have come into being and have been actually supported by his father, the deceased employee (citing *Portin* v. *Portin*, 149 Tenn. 530 [261 S. W. 362]). In this way only, could such a child be treated as a dependent under our statutes. A posthumous illegitimate child, therefore, is necessarily without the act."

To the same effect, see *Gierak* v. *Lehigh & Wilkes-Barre Coal Co.*, 101 Pa. Sup. 397.

The entire award should be affirmed.

NORTH, and WIEST, JJ., concurred with BUTZEL, J.